**BROWN et al. v. UNITED STATES.**
No. 44727.

Court of Claims.
March 3, 1941.

D. F. Prince, of Washington, D. C. (Geo. E. H. Goodner and Helen Goodner, both of Washington, D. C., on the briefs), for plaintiff.

S. E. Blackham, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

This suit is brought to recover estate taxes alleged to have been erroneously exacted from the plaintiffs as the executors of the estate of Pryor Brown, deceased. The grounds alleged here and in the claims for refund are: (1) that the Commissioner of Internal Revenue erroneously included in the gross estate of the decedent the amount of $11,058 as the value of an account due the estate from the Pryor Brown Transfer Company; (2) that he erroneously disallowed a deduction of $3,500, being the amount paid in settlement of a judgment against the estate on a note of $6,000 signed by the decedent as surety for one John W. Blankenship; and (3) that he erroneously disallowed the sum of $750, being the balance due on a note for $1,000 executed by the decedent to the St. Mary's Hospital Building Fund Association.

There are but two issues to be decided, since the defendant admits that the estate is entitled to the deduction of $3,500 paid in settlement of decedent's liability on the Blankenship note, with which we agree.

1. We think the Commissioner properly included in the decedent's estate the sum of $11,058 as the value of decedent's account against the Pryor Brown Transfer Company. The plaintiffs contend that this account was worthless and they so reported it to the Probate Court, and on

their State Inheritance Tax Return, and on their Federal Estate Tax Return, and they so testified on the hearing of this case. The defendant, however, introduced the balance sheet of the Pryor Brown Transfer Company as of a date just a few days prior to decedent's death. This balance sheet shows that the company had total assets of $29,-316.85, exclusive of good will, which was carried at $10,000. Against these were liabilities of $101,370.82, all of which, except $1,939.79, were due the decedent or the Brown Cab Company, all the stock of which the decedent owned, or C. J. Brown, decedent's son and one-half owner of the Pryor Brown Transfer Company. (See last paragraph of finding 2.)

If the figures on the balance sheet reflect the true value of the assets and liabilities, and if these values could have been realized on liquidation, the creditors would have received on liquidation approximately 29 percent of their claims. The balance sheet was introduced by the defendant. No testimony was offered in support of it; but, on the other hand, no testimony was offered by the plaintiffs to show that it did not reflect the true condition of the business. Since these facts were peculiarly within the knowledge of the plaintiffs, the burden was upon them to show this if they could. Having failed to do so, we must assume that it does correctly reflect the condition of the business.

It shows that this company was indebted to decedent in the amount of $93,408.14. Twenty-nine percent of this amount is $27,088.36. The Commissioner has valued the account at $11,058. It would, therefore, appear that his valuation was not excessive; at least, the plaintiffs have not shown that the Commissioner's valuation was excessive, and the burden was upon them to do this.

2. On the question of the plaintiffs' right to a deduction of the balance due on the note of $1,000 executed to St. Mary's Hospital Building Fund Association, the defendant contends, first, that this was a demand note and was barred by the six-year statute of limitations of Tennessee, section 8600, Code of Tennessee 1932, and, second, if incorrect in this, that, at any rate, $375 of it is barred, even if it be treated as an installment note, because so much of the amount due had matured more than six years prior to decedent's death.

The defendant evidently believed that the obligation evidenced by the note was a valid, enforceable obligation under the laws of Tennessee, and that it was contracted "for an adequate and full consideration in money or money's worth," because these points are not raised.

It does seem to be a valid, enforceable obligation under the laws of Tennessee. See Third Presbyterian Church v. Caldwell, 4 Higgins, 30, 4 Tenn. 30. Whether or not it was an obligation contracted for an "adequate and full consideration in money or money's worth" is a more difficult question.

It appears, however, that the note was executed "in further consideration that the full amount of One Hundred Thousand Dollars ($100,000.00) shall be subscribed by good and solvent parties for the erection of said hospital"; and it appears that more than the amount of $100,000 was subscribed therefor. In a similar case, the Sixth Circuit Court of Appeals in Taft v. Commissioner of Internal Revenue, 92 F.2d 667, 668, held that pledges to charitable institutions made for no other consideration than the promotion of the work of these institutions were not deductible as claims against the estate because not contracted "for an adequate and full consideration in money or money's worth." (It recognized, however, that a number of the other circuits had held to the contrary. Turner v. Commissioner, 3 Cir., 85 F.2d 919; Commissioner v. Bryn Mawr Trust Co., 3 Cir., 87 F.2d 607, 609; United States v. Mitchell, 7 Cir., 74 F.2d 571; In re Atkins' Estate, 5 Cir., 30 F.2d 761, 764.) But, on the other hand, it held that pledges made contingent upon sums being contributed to the same institution by others are deductible, because in such case there is a money consideration; to wit, the money contributed by others, citing, among other cases, Porter v. Commissioner of Internal Revenue, 2 Cir., 60 F.2d 673, 675.

The Taft case was followed by the Fourth Circuit in the case of Helvering v. Safe Deposit & Trust Company of Baltimore, 95 F.2d 806.

We are content to follow these decisions. While no pecuniary consideration passed to the promisor, nevertheless, his promise induced others to promise to pay money, and their promises to pay money induced his promise. In such case we think it can be said fairly that there was a money consideration. It is, of course, well settled that the consideration for a promise need not be a consideration passing to the promisor, but may be for the benefit of another, and the consideration may be to induce another to part with some right or property. See Emerson v. Slater, 22 How.

28, 16 L.Ed. 360; Williams v. First National Bank of Pauls Valley, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625.

On the question of the statute of limitations, if the note in question was a demand note, it was barred at the time of decedent's death. The statute begins to run at the time the right to make the demand accrues. Section 8604, Code of Tennessee 1932. Whether or not it was a demand note is not easy to determine. The printed form of the note provided for the payment of one-sixth or one-eighth of it on April 15, 1928, and one-sixth or one-eighth of it on the 15th day of each October and April thereafter until the amount was fully paid. The promisor was supposed to strike one provision or the other, depending on whether he wanted to pay it in six or eight installments, but neither provision was stricken, and underneath the signature of the payor he wrote "Advise us 10 days before entire pledged amount is wanted." Does this mean that he intended to disregard the printed portion of the note for the payment of it in installments, and intended to pay it all ten days after demand? This question can best be answered by what the parties did. He did not pay it all on demand, but paid two installments, each in the amount of one-eighth of the principal. If this was not in accord with his promise in the beginning, the agreement was at least so amended by mutual consent. We hold, accordingly, that at the date of his death the note, being nonnegotiable and, anyway, being in the hands of the original payee, was payable in installments of one-eighth of the principal amount.

But the defendant says that all of the installments had matured more than six years prior to decedent's death, except those maturing on October 15, 1930, April 15, 1931, and October 15, 1931, and that, therefore, only $375 of the obligation was legally enforceable at the time of decedent's death. The plaintiffs reply that the statute of limitations is a statute enacted for the benefit of the debtor and that he can plead it or not at his option. This is true. But there was a definite and inescapable obligation on the part of the executors of decedent's estate to plead the statute. If the statute had been pleaded, only those installments which matured within six years of decedent's death could have been enforced.

The plaintiffs say further that an action of debt could not have been maintained until all the installments had fallen due, citing the case of Blakemore v. Wood, 3 Sneed, Tenn., 470, and that, since the last installment matured within the statutory period, the entire note can be collected. However, in the case cited the court recognized that an action of assumpsit might have been brought for the installments as they severally became due. Whatever the form of action, the statute of limitations began to run as soon as a right of action accrued. We, therefore, hold that the plaintiffs are entitled to a deduction for only those installments which matured within six years before decedent's death. See City of Knoxville v. Gervin, 169 Tenn. 532, 89 S.W.2d 348; Morristown v. Davis et al., 172 Tenn. 159, 110 S.W.2d 337, 113 A.L.R. 1164.

Entry of judgment will be deferred until the filing of a stipulation by the parties, or, in the absence of such stipulation, until the incoming of a report of a commissioner, showing the amount due in accordance with this opinion. It is so ordered.