*In re* FORD'S ESTATE.

APPEAL OF HODGE.

1. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DE-
   CEASED—DEFINITION OF "OPPOSITE PARTY."
   An "opposite party" whose testimony, within meaning of statute
   barring testimony by party equally within knowledge of a de-
   ceased party, is one whose personal and financial interests,
   either immediate or remote, are in antagonism to the like in-
   terests of a protected party to the controversy (CL 1948,
   § 617.65).

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
   EVIDENCE.
   Testimony of witness who was not an "opposite party" and not
   prohibited by statute barring testimony by a party as to the
   matters equally within the knowledge of the deceased *held*,
   sufficient to sustain petition for construction of will (CL 1948,
   § 617.65).

3. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   Failure to object to testimony of witnesses, which might have
   been barred under statute relative to testimony by parties as
   to matters equally within the knowledge of the deceased and
   appellant's cross-examination of such witnesses, constituted a
   waiver of such statutory prohibition and rendered such testi-
   mony admissible (CL 1948, § 617.65).

4. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—
   WAIVER—ADMINISTRATORS.
   An administrator may not waive provisions of statute pro-
   hibiting a claimant against estate from testifying to facts,
   tending to support his claim, which were equally within
   knowledge of deceased, except where administrator examines
   or calls the opposite party to testify as to matters equally
   within knowledge of deceased (CL 1948, § 617.65).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 58 Am Jur, Witnesses § 281.
[3] 58 Am Jur, Witnesses § 356.
[5] 57 Am Jur, Wills §§ 1137, 1144.
[6] 57 Am Jur, Wills § 1049.
[6] Admissibility of extrinsic evidence to aid interpretation of will.
      94 ALR 26.
[6, 7, 10] 54 Am Jur, Trusts § 483.
[8] 54 Am Jur, Trusts § 148.
[9] 54 Am Jur, Trusts § 162.
[11] 3 Am Jur, Appeal and Error § 246.
[12] 14 Am Jur, Costs § 27.

5. WILLS—CONSTRUCTION—INTENT.

Effect must be given to the intent of the testator as gathered from the entire instrument and viewed in the light of the conditions existing at the time the will was made.

6. SAME—CONSTRUCTION—SETTING UP OF TESTAMENTARY TRUSTS.

A court was within its rights in receiving evidence to determine when testator intended certain trust provisions were to become effective, where he first provided a condition precedent to their being set up, namely, the death of his widow, and later provided for distributions of the separate trusts as each of the beneficiaries reached various specified ages.

7. SAME—CONSTRUCTION—EVIDENCE—TRUSTS.

Evidence sustained trial court's ruling that it was testator's intention not to postpone payments of income or principal from trusts for his 2 sons until the death of his widow.

8. TRUSTS—SPENDTHRIFT TRUSTS.

To create a spendthrift trust the gift to the donee must be only of an equitable interest in the income, the legal title must be vested in a trustee and the trust must be an active one, the donee take no estate whatever, have nothing to alienate, have no right to possession and have no beneficial interest in the land, but only a qualified right to support; spendthrift trusts not being terminable until their objects and purposes have been accomplished.

9. SAME—SPENDTHRIFT TRUSTS.

Trusts whereby sons of testator were allowed not more than a given sum per month and distribution of ⅓ of the corpus at ages 30, 35 and 40 but empowering the trustee to withhold income or distributable corpus in event either son developed spendthrift habits did not create spendthrift trusts.

10. WILLS—CONSTRUCTION—TRUSTS—CONTINGENT INTERESTS OF UNBORN CHILDREN.

Judgment of trial court construing will so that balance of corpus of testamentary trusts will be distributable when testator's sons reached age of 40 years and thereupon annihilated all contingent interests *held,* to have protected unborn children in accordance with the will of the testator which directed distribution of corpus of such trusts when sons reached age of 40 years.

11. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PROBATE COURT—CIRCUIT COURT—SUPREME COURT.

Issue not raised in the probate court incident to construction of a will cannot be raised in the circuit court, since its hearing is not *de novo,* nor in the Supreme Court.

12. COSTS—CONSTRUCTION OF WILL—GUARDIAN AD LITEM—GOOD FAITH.

No costs are allowed in suit for construction of a will upon affirmance of order made in the probate court, where appellant, acting in the capacity of guardian *ad litem,* presented meritorious issues in good faith.

Appeal from Oakland; Doty (Frank L.), J. Submitted June 7, 1951. (Docket No. 41, Calendar No. 45,155.) Decided September 5, 1951.

In the matter of the estate of George T. Ford, deceased. An agreement was filed to settle a controversy arising under the will. Order approving settlement made. Robert W. Hodge, guardian *ad litem* for possible unborn heirs appealed to circuit court. Affirmed. Guardian *ad litem* appeals. Affirmed and remanded.

*Glenn C. Gillespie,* for beneficiaries.

*Robert W. Hodge,* guardian *ad litem, in pro. per.*

SHARPE, J. This is an appeal by Robert W. Hodge, guardian *ad litem,* from an order of the circuit court affirming an order of the probate court approving a mutual agreement for the settlement of issues raised by a petition for the construction of the will of George T. Ford, deceased.

The facts which gave rise to the filing of the petition by the beneficiaries in the probate court, are briefly as follows: George T. Ford died testate on March 24, 1942, leaving as heirs at law him surviving, Margaret Ford, widow, and 2 sons, Milton J. Ford and Melvin L. Ford. Milton J. Ford later died leaving surviving a widow and a minor son.

Paragraphs 15 and 16 of Mr. Ford's will, which give rise to this controversy, are as follows:

"15. On the death of my wife, Margaret Ford, or should Margaret Ford predecease me, I direct that my entire estate (excluding specific bequests and excluding the funds to be set apart for the education of

my grandson, George T. Ford III, and my grandson, Douglas Milton Ford) to be divided into 2 equal separate trusts, 1 for the benefit of my son, Milton James Ford, and his issue by right of representation if Milton James Ford dies leaving issue, and 1 for the benefit of my son, Melvin Louis Ford and his issue by right of representation, if Milton [*sic* Melvin?] Louis Ford dies leaving issue. If either son dies without issue, his share will go to the survivor. My trustees shall have full power to invest and reinvest the corpus and surplus income from each of the above trusts and full power to sell, mortgage, lease, or otherwise dispose of the corpus of said trusts. The net income from each of said trusts, not to exceed $100 per month, may in the discretion of my trustees be paid to each of the beneficiaries until the corpus is distributed. On partial distribution of the corpus the monthly payment to be diminished accordingly.

"16. As each of my sons becomes 30 years of age, the trustees shall turn over to him $\frac{1}{3}$ of the corpus of the trust fund set up for his benefit, when each of my sons becomes 35 years of age, an additional $\frac{1}{3}$ of the trust fund set up for his benefit shall be paid to him, and when each of my sons becomes 40 years of age, the balance of the trust fund set up for his benefit shall be paid to him."

The will was duly admitted to probate on May 4, 1942, and the executors therein named proceeded with the administration of the estate. The Ford estate consisted of both real and personal property, but, as of the date of the filing of the annual account of the successor testamentary trustee on November 22, 1950, all of the real estate, except the homestead on which the widow has a life interest, which formed any part of the corpus of the trusts had been disposed of and the proceeds was represented by cash or government bonds amounting to approximately $136,000. Since that date the entire corpus of the trusts set up in paragraphs 15 and 16 of the will

has been held intact by the successor testamentary trustee, without any distribution or payments to any of the beneficiaries.

On January 5, 1950, Margaret Ford, widow, Melvin L. Ford, only surviving child of deceased, and Melvin L. Ford, as guardian of his minor son, Douglas Milton Ford, Helen M. Vanderbaker, surviving wife of Milton J. Ford, deceased son of George T. Ford, Helen M. Vanderbaker, administratrix of the estate of Milton J. Ford, deceased, and Helen M. Vanderbaker, guardian of George Thomas Ford, a surviving minor son of Milton J. Ford, filed a petition in the probate court praying for the construction of the last will and testament of George T. Ford. Petitioners asked that the testamentary trustee be forthwith directed to pay over all of the accumulated income and two-thirds of the corpus of the testamentary trust created for the benefit of Melvin L. Ford, inasmuch as he was then 35 years of age, and, to annually thereafter pay over all of the income therefrom, and, upon his attaining the age of 40 years, to pay him the remainder thereof. It also asked that the trustee be directed to pay to the administratrix of the estate of Milton J. Ford one-third of the corpus of the other trust, and all of the accumulated income to the date of his death, November 20, 1944, and, to pay the remainder of the income and corpus of the trust estate to the guardian of his surviving son, George Thomas Ford.

Following the filing of the petition, all of the parties in interest under the 2 trusts named in the petition, entered into a mutual agreement under CL 1948, §§ 702.45–702.47 (Stat Ann 1943 Rev §§ 27.3178 [115]–27.3178 [117]), which was filed in the probate court, under which they agreed it was not the intention of deceased that distribution of the trusts be suspended during the lifetime of his widow; and that the true construction of the will was in accord-

ance with the allegations set forth in the petition. Robert W. Hodge was appointed guardian *ad litem* to represent the interests, if any, of unborn children, and a hearing was had on the petition to approve the settlement agreement.

The probate court approved the mutual agreement which had been executed by all beneficiaries, and directed the testamentary trustee and guardian *ad litem* to join in the execution thereof. Under this order the testamentary trustee was authorized and directed to forthwith pay over all of the accumulated income and two-thirds of the principal of the trust created for Melvin L. Ford, and annually thereafter, to pay him the net income from the remaining one-third of the trust, and, upon his attaining the age of 40 years, to pay him the remainder. Should Melvin L. Ford die before attaining the age of 40 years, the trustee was directed to pay the residue of the trust estate to his lawful issue, by right of representation, and if he died without leaving issue, the same was to be paid to his heirs at law. The trustee was further directed to pay all of the accumulated income of the other trust estate to the date of death of Milton J. Ford and one-third of the principal to the administratrix of his estate, and to pay all of the remainder of the principal and interest to the guardian of his surviving minor son, George T. Ford.

No appeal was taken from the order by the testamentary trustee, but Robert W. Hodge, guardian *ad litem* for any person or persons not in being who might have a contingent interest in the assets of the trusts, took an appeal to the circuit court, setting up the following reasons:

"(1) That said order is in effect writing a new will for the testator; and (2) that said order is based upon an erroneous findings of fact as to (a) provision made for the widow and (b) existence of spendthrift trusts; and (3) that said order, under

the interpretation placed upon the will of decedent materially reduces, and in a short period of years would annihilate, the contingent rights of unborn children."

The cause came on for a trial, witnesses were sworn and at its conclusion, the trial court entered a judgment affirming the order of the probate court approving the mutual agreement for the settlement of issues raised by the petition for the construction of the will of George T. Ford, deceased, under which agreement the testamentary trustee was directed to presently distribute the assets of the 2 testamentary trusts.

The guardian *ad litem* appeals and urges that proof adduced by petitioners rests upon testimony as to matters equally within the knowledge of testator.[*] It appears that during the hearing before the circuit court, witnesses were produced by petitioners who testified that testator stated upon numerous occasions that the sons were to receive their shares of the estate when they reached the ages of 30, 35 and 40 years respectively. No objections were made when this testimony was offered and the guardian *ad litem* cross-examined some of the witnesses.

In *Hayes* v. *Skeman*, 269 Mich 473, we had occasion to define an "opposite party" as one whose personal and financial interests, either immediate or remote, are in antagonism to the like interests of a protected party to the controversy. Donald Menzies, a friend of deceased for more than 30 years, testified that deceased told him he wanted to be sure the boys had passed the age of 30 years and would be old enough to have some brains to know how to handle the money he was going to give them. We note that Mr. Menzies is not mentioned in the

---

[*] See CL 1948, § 617.65 (Stat Ann § 27.914).—REPORTER.

will and is not an opposite party. See *Shippee v. Shippee's Estate,* 255 Mich 35.

Gladys P. Comfort, niece of testator, Margaret Ford, widow of deceased, and Melvin Ford, son of deceased, testified that it was testator's intention that each of the boys would receive one-third of the trust fund as they reached the ages of 30, 35. and 40 years.

In our opinion, there can be no objection to the testimony of Donald Menzies as he was not an opposite party and not prohibited by the statute from testifying. His testimony is sufficient to sustain the petition. Appellant's failure to object to the testimony of the other witnesses and his cross-examination of them constitute a waiver of the statutory prohibition and their testimony was, therefore, admissible. See *Howatt v. Green,* 139 Mich 289.

In *Geisel v. Burg,* 283 Mich 73, we said:

"The general rule is that the administrator cannot waive the statute of limitations. *McGee v. McDonald's Estate,* 66 Mich 628. In *McHugh v. Dowd's Estate,* 86 Mich 412, we there held that an administrator may not waive the provisions of the statute which prohibits a claimant against the estate from testifying to facts, tending to support his claim, which were equally within the knowledge of the deceased. An exception to this rule is where the administrator examines the opposite party, he has waived the benefits of the statute."

See, also, *Rehm v. Interstate Motor Freight Systems* (CCA), 133 F2d 154.

The principal issue in this case relates to the time when the testamentary trustee shall distribute the principal and interest from the trust fund. Paragraph 15 of the will directs that upon the death of deceased's widow, his entire estate, with the exception of specific legacies, shall be divided into 2 equal separate trusts for the benefit of his 2 sons. Para-

graph 16 provides that as each of the sons attains the ages of 30, 35 and 40 years he shall be entitled to one-third of the corpus of the trust.

We note that the will was executed July 17, 1941; that deceased died March 24, 1942; that at the time of his death he left as heirs his widow, Margaret Ford approximately 54 years of age; one son, Melvin L. Ford, born October 26, 1914; and another son, Milton J. Ford, born June 29, 1912, who died November 20, 1944, leaving as heirs at law his widow (Helen M. Ford Vanderbaker) and a minor son, George T. Ford, born September 16, 1935.

Appellant urges that there is no conflict between paragraphs 15 and 16 of the will; that paragraph 15 imposes a condition precedent upon the setting up of separate trusts, namely the death of Margaret Ford, while paragraph 16 directs distribution of the corpus of each of the separate trusts to be set up after the death of Margaret Ford.

In the interpretation of a will, effect must be given to the intent of the testator as gathered from the entire instrument and viewed in the light of the conditions existing at the time the will was made. See *Kirsher* v. *Todd,* 195 Mich 297; *Detroit Trust Co.* v. *Stoepel,* 312 Mich 172; *In re Brown's Estate,* 324 Mich 264.

A reading of paragraphs 15 and 16 of the will immediately challenges one's attention to the question of when testator intended the trust provisions were to become effective, consequently, the court was within its rights in receiving evidence to determine this fact. There is competent evidence to affirm the ruling of the trial court that it was testator's intention not to postpone the payments of income or principal from the trusts until the death of deceased's widow.

Appellant also urges that paragraph 18 empowers the trustee to withhold all payment of either income

or corpus if the sons develop spendthrift or disorderly habits and paragraph 19 forbids assignment of any beneficial interest under the will, therefore, a spendthrift trust is created; and that the decision of the trial court would wipe out these provisions of the will.

Paragraphs 18 and 19 read as follows:

"18.  Should either or both of my sons at any time or times develop spendthrift or disorderly habits, my trustees are authorized and empowered to withhold from such son any part of the income and any any part of the distributable corpus provided herein directed to be paid to any beneficiary.

"19.  The trustees shall not be permitted nor authorized to recognize any assignment of interest or principal herein directed to be paid to any beneficiary."

We are not in accord with appellant's theory that the trusts created are spendthrift trusts.  In *Rose* v. *Southern Michigan National Bank,* 255 Mich 275, we held that spendthrift trusts cannot be terminated until their objects and purposes have been accomplished.  We also stated the nature of a spendthrift trust by quoting with approval from *Kessner* v. *Phillips,* 189 Mo 515 (88 SW 66, 107 Am St Rep 368, 3 Ann Cas 1005):

"In order to create a spendthrift trust certain prerequisites must be observed, to-wit:  First, the gift to the donee must be only of the income.  He must take no estate whatever, have nothing to alienate, have no right to possession, have no beneficial interest in the land, but only a qualified right to support, and an equitable interest only in the income; second, the legal title must be vested in a trustee; third, the trust must be an active one."

In the case at bar the legal title of the trust is vested in the trustee, but the beneficiaries take a

vested interest as the gift is of both principal and interest. While paragraph 18 gives the trustee certain discretion to withhold income in the event of future "spendthrift * * * habits," yet such discretion ends when the beneficiaries reach the age of 40 years, at which time the trust ceases to exist. We note that the order entered by the probate court and approved by the circuit court retains jurisdiction for the purpose of. making any further orders to carry out the terms of the will and of the spendthrift provision as to unpaid portions of the trust. In our opinion the 2 paragraphs of the will do not create a spendthrift trust.

Appellant also urges that the judgment entered by the trial court would immediately destroy five-sixths of the contingent possibility of a possible unborn child and would, in approximately 4 years, annihilate all contingent interests. Under the will of testator the rights of unborn children terminate when each of the beneficiaries reaches the age of 40 years. The judgment of the trial court protects these unborn children in accordance with the will of testator.

Appellant also urges that the trial court erred in not dismissing the petition for the reason that none of the petitioners objected to the admission of the will to probate but at a later date seek a construction of the will disregarding paragraphs 15, 18, 19 or 21 of the will. The record does not show that this issue was raised in the probate court or circuit court nor is it listed in appellant's reasons and grounds for appeal. It is mentioned for the first time in. appellant's brief. Moreover, on an appeal from the probate court to the circuit court the scope of the inquiry is limited to the issues raised in the probate court. The hearing in the circuit court is not *de novo.* See *Patrick* v. *Howard,* 47 Mich 40; *In re Murray's Estate,* 219 Mich 70; *In re LaFreniere's Es-*

*tate,* 316 Mich 285. It also follows that on appeal to the Supreme Court, issues not raised and disposed of by the trial court cannot be passed upon.

The judgment of the circuit court affirming the order of the probate court is affirmed, with directions to remand to the probate court for further proceedings. No costs are allowed as appellant acting in the capacity of guardian *ad litem* presented meritorious issues in good faith.

REID, C. J., and BOYLES, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred.