## Wormser Estate

*Joseph T. McDonald* and *Frank M. McDonald*, for petitioners.

*Paul E. Pendel*, for respondent.

BRADY, P. J., April 23, 1953.—This matter is before this court on a citation to set aside a testamentary trust. At the outset let me suggest that I think the proper procedure would be to file an account and have this matter disposed of on distribution. However, it is here on a citation to terminate the trust and answer by the trustee, so we will deal with it on that basis.

Dr. Bernard B. Wormser died in the city of Scranton, Pa., on December 28, 1939, testate. His will, dated August 22, 1930, was probated in the office of the Register of Wills of Lackawanna County and entered for record in Will Book No. 72, at page 399, and contains inter alia, and as applicable to the question before this court, viz:

"Article 11: All of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate at the time of my death, I give, devise and bequeath to the Scranton-Lackawanna Trust Company, of Scranton, Pa., IN TRUST, nevertheless, for the following uses and purposes, to wit:

"Section 1: To pay the net income therefrom in periodical installments to my three nieces, ADELAIDE STRAUSS, ELINOR STRAUSS and JANET VOGEL, share and share alike, for and during the terms and periods of their respective lives.

"Section 2: At and upon the expiration of five years from the date of my death, my Trustee shall pay over a one-third part of the corpus or principal of the Trust Estate to my three nieces, ADELAIDE STRAUSS, ELINOR STRAUSS and JANET VOGEL, share and share alike.

"Section 3: At and upon the death of each of my said nieces the Trust shall cease and terminate pro tanto and my Trustee shall distribute and pay over

the pro rata share of the corpus or principal of the Trust Estate from which such niece so dying shall have been receiving the income, to such persons, in such manner and in such proportions as such deceased niece may in and by her last will and testament appoint, provide and direct. In the event that such deceased niece should fail or neglect to make such provision in her last will and testament as to her pro rata share of the corpus or principal of the Trust Estate, then and in such event distribution thereof shall be made to the survivors of my said nieces, share and share alike.

"Section 4: Neither the principal nor the income of any Trust Estate herein created shall be liable for the debts of any beneficiary thereunder, nor shall the same be subject to seizure by any creditor of any beneficiary under any writ or proceeding at law or in equity, and no beneficiary thereunder shall have any power to sell, assign, transfer, encumber or in any other manner to anticipate or dispose of his or her interest in the Trust Estate or the income produced thereby.

"Section 5: I authorize my Trustee to pay from the corpus or principal of any Trust Estate herein created, such reasonable sum or sums as may be necessary to defray the cost and expenses of the last illness and burial, together with appropriate marker, of any beneficiary of such trust estate. My trustee shall have sole discretion as to the reasonableness and necessity thereof taking into consideration the estate and circumstances of such deceased beneficiary. My Trustee shall in no instance whatsoever be surcharged by reason of any such payment or payments.

"Section 6: If in the absolute and uncontrolled discretion of the Trustee the net income from any Trust herein created shall not be sufficient to provide for the reasonable needs and comforts of my nieces, or any one or more of them, during any period of the

trust, the Trustee is hereby authorized and empowered, but it shall in no event be required so to do, as often as it shall be necessary to apply or expend for the use and benefit of my said nieces or any one or more of them, such portion of the principal of the Trust Estate up to and including the whole thereof as said Trustee in its absolute discretion may determine to be sufficient and adequate for my nieces during the life of this Trust."

Under section 3 above, the life tenants are each given a power of appointment. Section 4 interposes a spendthrift trust provision. Section 5 provides for the payment of the funeral expenses of the beneficiaries. Section 6 gives the trustee "absolute and uncontrolled discretion . . . to apply or expend for the use and benefit of my said nieces, or any one or more of them, such portion of the principal of the Trust Estate up to and including the whole thereof as said Trustee in its absolute discretion may determine to be sufficient and adequate for my nieces during the life of this Trust."

In my opinion section 6, above quoted, is so broad and inclusive that the trustee has the power to terminate this trust on its own. In the answer filed the trustee admits practically all of the pertinent allegations in the petition, even to the extent of admitting that testator's purpose in creating the trust was to provide a substantial and ample income for each of his nieces; the apparent frustration of that purpose by the lowered income now received by those beneficiaries by reason of changed economic conditions, and decedent's apparent solicitude for the comfort, welfare and happiness of his nieces can lead to no other conclusion but that the intention of testator as originally planned, cannot be carried out by a continuance of the trust as planned and serve the best interest of the beneficiaries.

Let's consider the law in such cases as the one before us:

"While a court cannot control the discretion conferred upon a trustee it may compel him to exercise it in good faith and within the bounds of a reasonable judgment, and it may also interpose where he fails to use his judgment at all because of a mistaken view, either of fact or law, as to the extent of his powers or duties: *Harrar's Estate*, 244 Pa. 542, 549, 91 A. 503, 505; *Walters' Case*, 278 Pa. 421, 423, 424, 123 A. 408, 409": Brown's App., 345 Pa. 373, 379.

The trustee admits that the intention of testator cannot be carried out by a continuance of the trust, but the trustee evidently fears the effect of the spendthrift trust provision of the will. In this will the beneficiaries are given an absolute power to appoint the corpus; no other remaindermen are named in the will.

In Ford's Est., 331 Mich. 220, 49 N. W. 2d 154, it was held that in order to create a spendthrift trust the gift to the donee must be only of the income. Here, the beneficiaries take a vested interest in both principal and income.

A life tenant with a general power of appointment has an estate tantamount to a fee; no one but the donee has any interest in such power: Lyon et al. v. Alexander, 304 Pa. 288; Curran's Estate, 312 Pa. 416; Perkins' Trust Estate, 314 Pa. 49. That there was a spendthrift trust is immaterial in this connection: Miller's Estate, 333 Pa. 116. The right to "appoint" is a technical term; it means the power to name the taker who, when named in the manner prescribed, becomes the taker in the same way as if the maker had named him beneficiary. The appointment under the power is read into the will creating it: Wilbur's Estate, 334 Pa. 45.

Where the power is a general one under which the

donee may appoint to any one, even to his own estate, testator has completely relinquished all dead-hand dominion over the property and has placed it for all purposes as completely within the control of the donee of his power as though the fee had been created in him: Lyon et al. v. Alexander, 304 Pa. 288.

And now, April 23, 1953, it is my opinion that the life tenants have a vested interest in the corpus of the trust and that the prayer of the petition to terminate the trust and distribute the corpus to them should be granted.